## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2010 MAY -4 A 9: 49

JON W. SANFILIPPO, CLERK
MAIL-REC'D

Kevin Scheunemann,
             **Plaintiff,**         Court File No.: 2:09-cv-1134

v.

Associated Creditors Exchange, Inc. aka ACE,
             **Defendant.**

# Plaintiff's Partial Motion for Summary Judgment

## Motion for Partial Summary Judgment

Plaintiff moves for Summary Judgment against Defendant on Count #2, violation of the Fair Debt Collection Practices Act (FDCPA) resulting in conduct defined as "oppressive" and "deceptive" by the administrator **under the Wisconsin Consumer Act, Wis. Stat. § 427.104 (m) through DFI-BKG 74.16 (9)**, & Count #6, violation of the Wisconsin Deceptive Trade Practices Act.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION

## FOR PARTIAL SUMMARY JUDGMENT

### I.    PROCEDURAL HISTORY

On or about October 16, 2009, Kevin Scheunemann ("Scheunemann") filed this Complaint with the Court, alleging that Defendants Associated Creditors Exchange, Inc. ("ACE"), engaged in conduct attempting to collect a consumer debt claimed to be owed by Scheunemann. Scheunemann alleges that ACE engaged in a campaign of debt collection abuse that included, but was not limited to, the following: harassing Scheunemann by telephone in an attempt to collect a debt; falsely representing the urgency of payment; engaging in the Unauthorized Practice of Law ("UPL") in attempting to collect a debt; giving legal advice while attempting to collect debt; failing to disclose to Scheunemann of his thirty

day validation rights under the FDCPA; calling Scheunemann a "thief", "liar", "criminal" and "ignorant", ACE also informed Scheunemann he cannot appeal civil judgments, informed him that he could not have a jury for a civil matter, and threatened to make illegal credit bureau entries.

Scheunemann moves for partial Summary Judgment with respect to the claims that Defendant, ACE, engaged conduct prohibited as "oppressive" and "deceptive" debt collection.

## II.    LISTING OF UNDISPUTED FACTS

1.    Scheunemann is a natural person who resides at 210 Dream Catcher Dr. Kewaskum, WI 53040. Complaint, ¶ 3. Affidavit of Kevin Scheunemann, ¶ 1. Copy of affidavit attached as Plaintiff's Exhibit 5.

2.    Scheunemann is a "consumer" and "customer" for purposes of the FDCPA and the Wisconsin Consumer Act, as defined by 15 U.S.C. § 1692a(3) & Wis. Stat. § 421.301 (17). Complaint, ¶ 5. Affidavit of Kevin Scheunemann, ¶ 2 & 4.

3.    ACE is a "debt collector" located in Arizona.   ACE Answer, ¶ 4. Exhibits 1 & 2.   Affidavit of Kevin Scheunemann, ¶ 3 & 5.

4.    ACE regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. Complaint, ¶ 4.

5.    ACE is a "debt collector" for purposes of the FDCPA and Wisconsin Consumer Act, as defined by 15 U.S.C. § 1692a(6) and Wis. Stat. § 427.103 (3). Complaint, ¶ 4. Affidavit of Kevin Scheunemann, ¶ 3 & 5.   Exhibits 1 & 2. (FDCPA "bona fide" error defense is not available to non-debt collectors).

6.    Angie Hernandez is an employee of ACE. Complaint, ¶ 11-12. Exhibits 1,2. Affidavit of Kevin Scheunemann, ¶ 7.

7. Angie Hernandez is a "debt collector" for purposes of the Fair Debt Collection Practices Act and Wisconsin Consumer Act, as defined by 15 U.S.C. § 1692a(6) and Wis. Stat. § 427.103 (3). Complaint, ¶ 6. Exhibits 1 & 2.

8. All underlying claims for collection by ACE in Exhibits 1,2,3 & 4 were primary used for personal and household purposes under Wis. Stat. § 427.103 (1). Affidavit of Kevin Scheunemann, ¶ 4.

9. ACE is a "merchant" under Wis. Stat. § 421.301 (25). Affidavit of Kevin Scheunemann, ¶ 5.

10. A phone call between Kevin Scheunemann and Angie Hernandez took place on 3/13/09. Hernandez represented she was working for ACE, the Defendant in this lawsuit. Affidavit of Kevin Scheunemann, ¶ 6 & 7.

11. Hernandez was collecting a U.S. Bank consumer claim. Scheunemann demanded the FDCPA required "dunning notice" required for the claim. Hernandez sent the FDCPA dunning notice on 3/12/09. HERNANDEZ NEVER OBJECTED TO THE FDCPA APPLYING TO THE CLAIM. Affidavit of Kevin Scheunemann, ¶ 8.

12. Scheunemann asserted his rights under the FDCPA and WCA. AT NO TIME DID HERNANDEZ OBJECT TO THE WCA APPLYING TO THE CLAIM. Affidavit of Kevin Scheunemann, ¶ 9.

13. Hernandez claimed consumer had no right to request documentation under FDCPA. Scheunemann made documentation demands under the WCA. Affidavit of Kevin Scheunemann, ¶ 10.

14. Hernandez complained to her coworkers that Scheunemann was demanding FDCPA rights. Affidavit of Kevin Scheunemann, ¶ 11.

15. Hernandez exited the call and an unidentified female supervisor ("Jane Doe") began to talk with Scheunemann. Jane Doe asked Scheunemann, "why can't you just pay this bill?" Scheunemann replied, "because I have no idea who you are and what you are talking about." Affidavit of Kevin Scheunemann, ¶ 12.

16. Jane Doe, unidentified female supervisor for ACE, then called Scheunemann a "thief", and a "liar". Scheunemann was shocked and dismayed. Affidavit of Kevin Scheunemann, ¶ 13

17. Scheunemann informed Jane Doe from ACE that she is not allowed to say that under state and federal law. Affidavit of Kevin Scheunemann, ¶ 14.

18. Jane Doe from ACE then rudely cut Scheunemann off and shouted that she and ACE did not have to adhere to state law. Affidavit of Kevin Scheunemann, ¶ 15.

19. Scheunemann indicated, "Let's get a state court jury to decide that. Can I get a copy of this phone call recording?" Affidavit of Kevin Scheunemann, ¶ 16.

20. Jane Doe, unidentified female supervisor for ACE then indicated Scheunemann was "ignorant" and that Scheunemann could have a jury for this civil issue. Affidavit of Kevin Scheunemann, ¶ 17.

21. Scheunemann again explained that federal and state debt collection law does not allow for those threats. Affidavit of Kevin Scheunemann, ¶ 18.

22. Jane Doe, female supervisor from ACE then gave the phone to an unidentified male supervisor from ACE. ("John Doe"). Affidavit of Kevin Scheunemann, ¶ 19.

23. Immediately, John Doe, male supervisor from ACE, accused Scheunemann of "fraud" and "criminal activity". Scheunemann

was again shocked and dismayed. Affidavit of Kevin Scheunemann, ¶ 20.

24. Scheunemann again explained federal and state law does not allow for those kind of collection tactics. Affidavit of Kevin Scheunemann, ¶ 21.

25. Immediately, John Doe, male supervisor from ACE, cut Scheunemann off. John Doe threatened to immediately add to Scheunemann's public records on his credit report. Scheunemann took this to mean false and made up court judgments and other false derogatory credit entries made by this ACE supervisor. Affidavit of Kevin Scheunemann, ¶ 22.

26. Scheunemann explained the public record on his credit report is on appeal and that Scheunemann did not agree with the judgment. Affidavit of Kevin Scheunemann, ¶ 23.

27. John Doe, male supervisor from ACE then told Scheunemann he was "stupid" and that Scheunemann "can't appeal a civil judgment". Affidavit of Kevin Scheunemann, ¶ 24.

28. Scheunemann was shocked, confused, and distressed. Scheunemann immediately feared for his safety and his family's safety because Scheunemann firmly believed this ACE supervisor was capable of anything. Affidavit of Kevin Scheunemann, ¶ 25.

29. Scheunemann asked if John Doe supervisor for ACE would like to explain his last statement to the 3-judge panel in the Wisconsin 2nd District Court of Appeals. John Doe from ACE hung up the phone. Affidavit of Kevin Scheunemann, ¶ 26.

30. Scheunemann spent weeks worrying about what ACE employees were going to do. Scheunemann explained to ACE 3 times that they were violating the law and ACE kept right on violating the law. Scheunemann feared ACE, and its employees,

were willing to violate and break any law. Scheunemann worried about derogatory credit entries, harassing phone calls, unlawful letters, and an ACE employee showing up at his house doing harm to Scheunemann, his wife, or his children. Affidavit of Kevin Scheunemann, ¶ 27.

31. Scheunemann believes ACE employees were attempting to give legal advice. Affidavit of Kevin Scheunemann, ¶ 28.

32. Scheunemann received Exhibit #1 from Angie Hernandez on 3/20/10, 3 days after the 5-day FDCPA requirement. Hernandez indicated she was a "debt collector" under the FDCPA and also referred to section 15 USC § 1692E(11) in her letter. AT NO TIME DID HERNANDEZ OR ACE MAKE REFERENCE TO THIS BEING A COMMERCIAL CLAIM. Affidavit of Kevin Scheunemann, ¶ 29.

33. Hernandez also wrote to Scheunemann in Exhibit #2. Scheunemann received this letter on 3/20/10. Hernandez again asserted she was a "debt collector" under the FDCPA. Hernandez also stated, "This will confirm our most recent conversation wherein you agreed to remit payment in full for the above listed balance upon receipt of this letter." Scheunemann did not agree, at any time, to make payment during the phone conversation Hernandez claimed in this letter. Scheunemann considers this letter to be false, untrue, and deceptive. Scheunemann considers Hernandez to be a liar. Affidavit of Kevin Scheunemann, ¶ 30.

34. Scheunemann mailed Exhibits #3 and #4 on 3/22/10 to assert his rights under the FDCPA and WCA. ACE refused to document their alleged claim. Affidavit of Kevin Scheunemann, ¶ 31.

35. As a result of ACE's actions, Scheunemann was forced to abandon a large asset. Affidavit of Kevin Scheunemann, ¶ 32.

36. In January 2003, Scheunemann entered into a business deal to sell the y Queen in Belgium, Wisconsin. This transaction included carrying a $120,000, interest payment only, promissory note from the buyer, at the stated interest rate. The note included taking a second lien filing on the assets of the business. Affidavit of Kevin Scheunemann, ¶ 33 Exhibit #6.

37. On 1/1/08 the promissory note was defaulted on. Kevin Scheunemann attempted several work out agreements with the maker of the note over the next 20 months. None of those ideas worked out. The solution to the default was for Kevin Scheunemann to assume and take the business assets back and take over the business. This solution needed American Dairy Queen (ADQ) transfer approval. <u>Kevin Scheunemann feared pursuing this option because of his obligation, under the ADQ transfer rules, disclosing ACE's deceptive letters and phone communication sent to Scheunemann in March 2009.</u> As a result of ACE's misleading representations, Kevin Scheunemann chose not to pursue the ADQ transfer option, fearing disclosure of those ACE's representations would have repercussions for his existing Dairy Queen business in Kewaskum with ADQ. Affidavit of Kevin Scheunemann, ¶ 34. Exhibit #6.

38. As a result of Kevin Scheunemann's fear generated by ACE's untrue representations to him under Wis. Stat. § 101.18, Mr. Scheunemann reasonably chose not to pursue ADQ transfer. The entire business in Belgium, WI ended up closing. Had Mr. Scheunemann been able to transfer and secure the business back, with ADQ transfer permission, Mr. Scheunemann could

have retained the entire defaulted note and business equity he lost. The business in Belgium, WI would be open today. Instead, Mr. Scheunemann lost the entire $120,000 note, plus interest since 1/1/08, and any future business profit that may have resulted from the ADQ transfer. Affidavit of Kevin Scheunemann, ¶ 35.

## III.   ARGUMENT OF LAW

### A. INTRODUCTION

The FDCPA was passed by Congress on September 20, 1977, P.L. 95-102, effective March 20, 1978. In its stated findings and purpose, 15 U.S.C. §1692, Congress found "abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors." Based on its findings and its specific determination of the inadequacy of existing remedies for redressing the substantial injuries to consumers caused by these practices, Congress added the FDCPA as Title VIII of the Federal Consumer Credit Protection Act (CCPA), its plenary regulation of the national consumer credit industry.

Consistent with the other four Titles of the CCPA which provide private causes of action, [Title I, Truth in Lending Act, 15 U.S.C. Section 1602 et seq. (TILA); Title IV, Fair Credit Reporting Act, 15 U.S.C. Section 1681 et seq.; Title VII, Equal Credit Opportunity Act, 15 U.S.C. Section 1691 et seq.; and Title IX, Electronic Fund Transfer Act, 15 U.S.C. Sections 1693 et seq.], the FDCPA establishes a system of enforcement primarily by private attorneys general. 15 U.S.C. § 1692k; West v. Costen, 558 F.Supp. 564 (W.D. Va. 1983); Russey v. Rankin, 837 F.Supp. 1103, 1105 (D.N.M. 1993); Whatley v. Universal Collection Bureau, Inc., 525 F.Supp. 1204, 1206 (N.D. Ga. 1981). As is the case regarding these other Titles of the CCPA, the FDCPA is a remedial, strict liability statute to be liberally construed, requiring no proof of deception or actual damages to obtain its statutory remedies. "The test is the capacity of the statement to mislead; evidence of

actual deception in unnecessary." U.S. v. National Financial Services, Inc., 98 F.3d 131, 139 (4th Cir. 1996); Russell v. Equifax A.R.S., 74 F.3d 30 (2nd Cir. 1996), Bentley v. Great Lakes Collection Bureau, Inc., 6 F.3d 60, 63 (2nd Cir. 1993); Baker v. G.C. Services Corporation, 677 F.2d 775, 780 (9th Cir. 1982); Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir.1997); Keele v. Wexler, 149 F.3d 589, 593 (7th Cir. 1998); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 175 (W.D.N.Y. 1988). Cavallaro v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148 (E.D.N.Y. 1996), Cirkot v. Diversified Financial Systems, 839 F.Supp. 941, 944 (D. Conn. 1993); Cacace v. Lucas, 775 F.Supp. 502, 506-507 (D. Conn. 1990); accord, Redhouse v. Quality Ford Sales, Inc., 523 F.2d 1, 2 (10th Cir. 1975) (en banc) (TILA); McGowan v. King, Inc., 569 F.2d 845 (5th Cir. 1978) (TILA). The Wisconsin Consumer Act under Wis. Stat. § 421.102 (d), demands state law consumer remedies work in "coordination" with Federal Consumer Law, including the FDCPA. Wisconsin Consumer Act standard of review must also adopt the FDCPA "least sophisticated debtor" or "unsophisticated consumer" standard for state law debt collection violations as well.

The FDCPA imposes three requirements to establish a violation of this federal law: (1) the plaintiff who has been the object of collection activity is a "consumer" as defined, (2) the defendant collecting the debt is a "debt collector" as defined, and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the law. Kolker v. Duke City Collection Agency, 750 F.Supp. 468, 469 (D.N.M 1990); Riveria v. MAB Collections, Inc., supra. The facts necessary and material to the first two of these three determinations are uncontroverted. Plaintiff submits that the third determination is established as a matter of law by the incontrovertible proof that ACE engaged in behavior that violated the FDCPA.

## B. STANDARD FOR SUMMARY JUDGMENT

The entry of summary judgment is inappropriate where there exists a genuine and material issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10, 91 L. Ed. 2d 202 (1986). Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment. Id. at 248, 106 S. Ct. at 2510. A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party." Id. Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 547, 586–87, 106 S. Ct. 1348, 1355–56, 89 L. Ed. 2d 538 (1986). It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting its case. Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 252, 106 S. Ct. at 2512.

## C. DEFENDANTS ENGAGED IN FALSE OR MISLEADING REPRESENTATIONS.

The Act at 15 U.S.C. § 1692e(5) and e(10) provides in pertinent part:

> **§ 1692e. False or misleading representations**
> **[Section 807 of P.L.]**
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the forgoing, the following conduct is a violation of this section:
> ...
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> ... (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Among the false an misleading representations committed by ACE and testified via affidavit by Mr. Scheunemann:

1.) ACE told Scheunemann he could not have a civil jury on a civil claim.

2.) ACE told Scheunemann he could not appeal a civil judgment.

3.) ACE called Scheunemann "stupid", "ignorant", and a "liar".

4.) ACE accused Scheunemann of "criminal activity", a "thief", and "fraud" for not paying the alleged claim.

## D. CALLING SCHEUNEMANN A "CRIMINAL" WAS UNLAWFUL

Defendants were collecting on alleged January 2007 debt. ACE debt collectors called Scheunemann a "thief" and accused him of "criminal activity".

15 U.S.C. § 1692e generally prohibits false, deceptive or misleading representations. Subsection (2) prohibits the false representation of the legal status of the debt. Subsection (4) prohibits the "representation or implication" that nonpayment "will result in the arrest or imprisonment" unless the action is lawful and the debt collector intends to take such action. Subsection (5) prohibits the threat to take any action that cannot be legally taken, or that is not intended to be taken.

## E. MENTION OF CIVIL PROCEEDINGS WAS UNLAWFUL

Defendants' mentioned that Scheunemann could not have a civil jury over this claim. Defendants' also said that Scheunemann was "stupid" and "ignorant" when Scheunemann mentioned he was appealing a current civil judgment. Defendants' then told Scheunemann he can't appeal a civil judgment. No civil proceedings were intended by ACE. ACE has no power to make that decision. ACE had no documents of the claim to sue upon.

A deceptive threat of civil action is a classic, well-known violation of the FDCPA. *E.g. Pipiles v. Credit Bureau, Inc.*, 886 F.2d 22, 25-26 (2d Cir. 1989); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

## F. DEFENDANTS VIOLATED STATE LAW

The Wisconsin Consumer Act parallels the FDCPA. The Wisconsin Consumer Act parallels the FDCPA at Wis. Stat. § 427.104. The Department of financial Institutions at 74.16 (9) has determined by regulation that the practices were unfair or deceptive, a violation of a federal law is a per se violation of Wisconsin Consumer Act.

## G. Defendants violated Wisconsin Deceptive Trade Practice Act

"Entitled "Fraudulent representations," section Wis. Stat. § 100.18 is a multi-section statute "intended to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product." It is "**broad in scope, affecting numerous entities, products, services, and means of communication**." It "was enacted to address the shortcomings of common law protections for consumers" and to protect against both overt and implicit deception. Its general purpose "is to prevent certain activities deemed harmful to citizens' economic and social well being," even though the damages from such illegal activities may not be easy to quantify."[1]

"Despite the reference to traditional forms of advertising, section 100.18 provides a remedy for more than mere "false advertising." The Act is not limited to media advertising; it also applies to oral representations made in private conversations to prospective purchasers of products, such as part of a face-to-face sales promotion. The

---

[1] Hinkston, Mark, Wisconsin Lawyer, October 2008

statement need not be made to a large audience because the DTPA covers fraudulent representations made to just one person."[2]

The Wisconsin DTPA covers both consumer and commercial activity and is more expansive in scope than the Wisconsin Consumer Act.

The elements for Defendant violating the act in this case would involve.

    a. ACE made a representation to the public with the intent to induce an obligation.
    b. The ACE representation was untrue, deceptive or misleading.
    c. The untrue, deceptive, or misleading ACE representation caused the Scheunemann a pecuniary loss.

**a. "The public".**

The public can include one person.   The court, in the past, established a "prior relationship test" to determine whether one person can be a member of "the public".   In this case, there is no prior relationship between Scheunemann and the Defendant[3].   If there is a prior relationship, the recent *Novell v. Migliaccio,* 2008 WI 44; 749 N.W.2d 544 now encompasses parties involved in a contractual relationship.   In other words, parties in a prior relationship are still members of the "public" for the purposes of the Deceptive Trade Practices Act.   There is no question, based on submitted exhibits, ACE made representations to Kevin Scheunemann, as a member of the public, with intent to induce Scheunemanns to pay an alleged obligation.

**b. The ACE representation was untrue, deceptive or misleading**.

There is no question an untrue, deceptive, or misleading representation was made:

    1.) ACE called Scheunemann a "liar".

---

[2] Hinkston, Mark, Wisconsin Lawyer, October 2008
[3] Affidavit of Kevin Scheunemann ¶ 36

2.) ACE called Scheunemann a "thief".

3.) ACE called Scheunemann "stupid".

4.) ACE stated that Scheunemann could not have a jury for a civil dispute.

5.) ACE stated that Scheunemann could not appeal a civil judgment.

6.) ACE accused Scheunemann of "fraud".

7.) ACE accused Scheunemann of "criminal activity".

All of those statements are deceptive and misleading. Those statements meet the minimum standard of *untrue*.

### c. The ACE representation caused Scheunemann a pecuniary loss.

The Economic Loss Doctrine does not apply under Wis. Stat. § 100.18. *Kailin v. Armstrong* 2002 WI App 70, 252 Wis. 2d 676, 643 N.W.2d 132. The test of pecuniary loss is whether the plaintiff would have acted in the absence of the representation from ACE. Scheuneman has submitted an affidavit that had it not been for the deceptive acts of ACE, Scheunemann would have acted to secure a $120,000 second lien on a defaulted business note. Scheunemann feared repercussions from disclosure of ACE's deceptive collection actions with the parent franchisor, the parent entity responsible for transfer approval back to Scheunemann. This transfer approval would have allowed Scheunemann to secure his second business lien and note. Scheunemann chose not to pursue transfer approval for fear of disclosure of ACE's actions to parent transfer agent. This resulted in the business closing and Scheunemann losing his $120,000 lien and note.

Scheunemann is not required to prove "reasonable reliance" according to the recent State Supreme Court decision *Novell v. Migliaccio,*

2008 WI 44, -- Wis. 2d --, 749 N.W.2d 544.    Scheunemann's fear and reliance on ACE's deceptive behavior does not have to be reasonable.

### IV.    Summary Judgment Count #2-Violation of Wisconsin Consumer Act by violating FDCPA- Oppressive and Deceptive behavior

The Defendants are no strangers to FDCPA claims resulting from their illegal debt collection practices.   One purpose of statutory damages is to provide an incentive for debt collectors to obey the law. Strange v. Wexler, 796 F. Supp. 1117, 1120 (N.D. Ill. 1992). In Withers v. Eveland, 988 F. Supp. 942 (E.D. Va. 1997).   ACE violated the FDCPA by making false and misleading statements.     The administrator defines any violation of FDCPA under DFI-BKG 74.16(9) as "oppressive and "deceptive".   Any "oppressive" and "deceptive" behavior constituting behavior that violates the Wisconsin Consumer Act under Wis. Stat. § 427.104 (h) and (m).

Kevin Scheunemann is immediately entitled to the maximum Statutory Damages on Count #2 for FDCPA violations under Wis. Stat. § 425.304 (1).

With actual damages for Kevin Scheunemann under Wis. Stat. § 425.304 (2) and punitive damages allowed under Wis. Stat. § 425.301 (1) to be submitted to a jury for a later determination.

### V.) Summary Judgment Count #6-Violation of Wisconsin Deceptive Trade Practices Act

ACE violated Wis. Stat. § 100.18 by engaging in "deceptive" behavior. The standard for violating 100.18 is:

a. ACE made a representation to the public with the intent to induce an obligation.

b. The representation was untrue, deceptive or misleading.

c. The representation caused the Scheunemann's a pecuniary loss.

Immediate award of defaulted $120,000 promissory note Scheunemann could not secure resulting from decisions made based on ACE's violation, and back dated interest to the default date of 1/1/08 for the specified interest rate in the note. Further pecuniary damages to be determined by a jury in relation to the lost profits from the shuttered business.

## VIII.) CONCLUSION

Plaintiff, Kevin Scheunemann, requests partial Summary Judgment be entered in his favor, because the Defendants' used false, deceptive, untrue, or misleading representations which resulted in unconscionable debt collection practices.

Plaintiff requests immediate entry of judgment for statutory damages against the ACE pursuant to Wis. Stat. § 425.304 (1). Pecuniary judgment damages of $120,000, plus interest at 6.5% since 1/1/2008, under Wis. Stat. § 100.18 against ACE. Remaining actual Wisconsin Consumer Act damages under Wis. Stat. § 425.304 (2), Wisconsin Consumer Act punitive damages allowed under Wis. Stat. § 425.301 (1), and remaining pecuniary damages under Wis. Stat. § 100.18 to be determined later by a jury. Remaining complaint counts, not part of this summary judgment, to be also determined by a jury.

Respectfully submitted,

Dated in Washington County, Wisconsin this 3rd day of May 2010.

By:

Kevin  Scheunemann
210 Dream Catcher
Kewaskum, WI  53040
262-339-5425
kewaskumdq@verizon.net

## Certificate of service

I, Kevin Scheunemann, certify that _____, 2010, I mailed a true and correct copy of the above summary judgment motion to: ACE's Wisconsin legal counsel.

_____

Kevin Scheunemann

Please send a copy of all notices and correspondence to:

Kevin Scheunemann
210 Dream Catcher Dr.
Kewaskum, WI 53040